UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

BURBERRY LIMITED (UK) and
BURBERRY LIMITED (US),

                Plaintiffs,

      v.

BURBERRY-SCARVES.COM; PINGBURBERRYSCARF.COM;
XIAO XIAO; CHEAPBURBERRYSCARF.COM;
BURBERRY2U.COM; BALI BAO; INBURBERRY.COM; BOO
BO; BURBERRYDRESS.COM; BURBERRYSCARF-UK.COM;
BURBERRYSCARF-US.COM; ZHOU YINGJIE;
USBURBERRYOUTLETS.COM; USBURBERRYSCARF.COM;
XIAOBO QU; BURBERRYOUTLETSTORES.NET;
USBURBERRYOUTLET.NET; BURBERRY-OUTLET-
ONLINE.NET; UKBURBERRY.NET; WENG XIAO TENG;
BURBERRY-OUTLET-ONLINE.COM; HUANG FEI FEI;
BURBERRYOUTLETONLINE.NET; LIN BINBIN;
BURBERRYOUTLETONLINES.COM; HUANG WEIBIN;
BURBERRYUK.NET; USABURBERRY.COM;
USABURBERRY.NET; LIN XIAOCHUN;
BURBERRY4BAGS.COM; LIU QI DONG;
BURBERRYLINES.COM; LINENQIAO;
BURBERRY4HANDBAGS.COM; WANG DONG MU;
MYBURBERRYSHOPS.COM; HE GU MING;
BURBERRY-BAGS.COM; ZHONGLIN;
BURBERRY-SCARF.NET; BEIXING; BURBERRY-BAG.ORG;
TVB; BURBERRYONSLAE.COM; XIN ZHONG;
MYBURBERRYOUTLET.COM; ZHANG DAMING;
SALEBURBERRYBAGS.COM; LVDU; BURBERRY-SCARF-
SALE.NET; LI JINGJING; BURBERRY-OUTLET.ORG; RALIX
TIKER; DISCOUNT-BURBERRY-HANDBAGS.ORG;
US-BURBERRY-OUTLET.COM; SAM WU a/k/a WU
YUANSHENG; USBURBERRYOUTLET.COM; GRANT a/k/a
WU GRANT; BURBERRYSCARF.ORG; LIN SHENG;
BURBERRY-OUTLET-STORES.COM; LIU NAN;
BURBERRYOUTLETONLINE.COM; LI XIAO BO;
BURBERRY-OUTLET.NET; XYZ COMPANIES; and JOHN
DOES 1-100.

                Defendants.

_____

Civil Action

No.: _____

**MEMORANDUM OF LAW IN SUPPORT OF BURBERRY'S MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ASSET RESTRAINING ORDER, DOMAIN NAME TRANSFER ORDER, AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116**

**MEMORANDUM OF LAW IN SUPPORT OF
BURBERRY'S MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER,
SEIZURE ORDER, ASSET RESTRAINING ORDER,
DOMAIN NAME TRANSFER ORDER, AND ORDER TO SHOW CAUSE FOR A
<u>PRELIMINARY INJUNCTION</u>**

Joseph C. Gioconda (JG4716
Jonathan A. Malki (JM4410)
THE GIOCONDA LAW GROUP PLLC
One Penn Plaza, 36th Floor
New York, New York 10119-0002
Telephone:  (212) 786-7549
Facsimile:  (888) 697-9665
Joseph.Gioconda@GiocondaLaw.com

*Attorneys for Plaintiffs Burberry Ltd. (UK)
and Burberry Ltd. (US)*

New York, NY
December 9, 2010

## TABLE OF CONTENTS

Page(s)

**INTRODUCTION** ...................................................................................................1

**FACTUAL BACKGROUND**................................................................................2

**ARGUMENT**.........................................................................................................5

I.  BURBERRY IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION HALTING DEFENDANTS' COUNTERFEIT SALES......................................................................................................5

    A.  The Defendants' Sale of Counterfeit Products on the Infringing Websites Irreparably Harms Burberry.......................................................................5

    B.  Burberry is Likely to Prevail on its Trademark Counterfeiting, Infringement, Dilution, Cybersquatting, and Unfair Competition Claims ..6

        1.  Burberry is Likely to Prevail on its Claims Alleging Federal Trademark Counterfeiting and Trademark Infringement in Violation of Section 32 of the Lanham Act (15 U.S.C. § 1114)......6

            a.  The Burberry Trademarks are Valid, Protectable, and Famous............................................................................................7

            b.  Defendants' Counterfeiting Constitutes Use in Commerce Likely to Cause Consumer Confusion ..................................8

        2.  Burberry is Likely to Succeed on its Claims Alleging False Designation of Origin in Violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a))...........................................................10

        3.  Plaintiffs are Likely to Succeed on Their Claims Alleging Federal Trademark Dilution in Violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)) and Trademark Dilution in Violation of the New York General Business Law (N.Y. Gen. Bus. Law § 360-1) ..............................................................................................11

        4.  Burberry is Likely to Prevail on its Claim that the Infringing Websites' Domain Names Constitutes Cybersquatting Under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1))...........................................................................13

            a.  Burberry's Trademarks Are Distinctive and Famous ........14

            b.  The Defendants' Domain Names Are Identical Or Confusingly Similar To and Dilutive of the Burberry Trademarks ...................................................................14

**Table of Contents**
**(Continued)**

Page

        c.   Defendants Have a Bad Faith Intent to Profit From the Burberry Trademarks .........................................................15

     5.   Burberry is Likely to Succeed on its Claims that the Defendants have Committed Deceptive Acts and Practices Unlawful in Violation of the New York General Business Law (N.Y. Gen. Bus. Law §§349 and 350) and Engaged in Unfair Competition in Violation of the New York Common Law ...................................17

   C.  The Balance of Hardships Decidedly Tips in Plaintiffs' Favor.................19

   D.  Enjoining the Defendants' Activities is in the Public Interest..................19

 II.  THIS COURT HAS THE AUTHORITY TO ISSUE AN *EX PARTE* ORDER..........20

III.  PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS .............................................................24

IV. RULE 64 PROVIDES AN ADDITIONAL GROUNDS TO FREEZE DEFENDANTS' ASSETS.........................................................................................26

 V. PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY ............................27

CONCLUSION ......................................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Honda Motor Co. v. Pro-Line Protoform,*
325 F. Supp. 2d 1081 (C.D. Cal. 2004) ....................................................................13

*Audi AG v. D'Amato,*
469 F.3d 534 (6th Cir. 2006) .................................................................................17

*Ayyash v. Bank Al-Madina,*
233 F.R.D. 325 (S.D.N.Y. 2005) .......................................................................25, 28

*Balenciaga America, Inc. v. Dollinger,*
No. 10 Civ. 2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010)...................24, 25

*Bank of Leumi Trust Co. of New York v. Istim, Inc.,*
892 F. Supp. 478 (S.D.N.Y. 1995) .........................................................................27

*Biosafe-One, Inc. v. Hawks,*
524 F. Supp. 452 (S.D.N.Y. 2007) .........................................................................12

*Burberry Ltd. and Burberry USA v. Designers Imports, Inc.,*
No. 07 Civ. 3997 (PAC), 2010 WL 199906 (S.D.N.Y. Jan. 19, 2010) .........................8

*Burberry Ltd. v. Euro Moda, Inc.,*
No. 08 Civ. 5781 (CM), 2009 WL 1675080 (S.D.N.Y. June 10, 2009)................ *passim*

*Dudley v. HealthSource Chiropractic, Inc.,*
585 F. Supp. 2d 433 (W.D.N.Y. 2008) ....................................................................14

*Estee Lauder, Inc. v. Watsky,*
323 F. Supp. 1064 (S.D.N.Y. 1970) ........................................................................19

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,*
689 F. Supp. 2d 585 (S.D.N.Y. 2010) .....................................................................12

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC,*
651 F. Supp. 2d 72 (S.D.N.Y. 2009) .......................................................................19

*GTFM, Inc. v. Solid Clothing, Inc.,*
215 F. Supp. 2d 273 (S.D.N.Y. 2002) ................................................................12, 18

**Table of Authorities**
**(Continued)**

Page(s)

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
286 F. Supp. 2d 284 (S.D.N.Y. 2003) ...........................................................................9

*Gucci Am., Inc. v. Curveal Fashion,*
No. 09 Civ. 8458 (RJS), 2010 WL 308303 (S.D.N.Y. Jan. 20, 2010).................................9, 26, 27

*Hasbro, Inc. v. Lanard Toys, Ltd.,*
858 F.2d 70 (2d Cir. 1988).............................................................................................6

*Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.,*
219 F.3d 104 (2d Cir. 2000)........................................................................................ 19-20

*Hotel 71 Mezz Lender LLC v. Falor et al.,*
14 N.Y.3d 303 (2010) ...................................................................................................26

*In re Vuitton Et Fils S.A.,*
606 F.2d 1 (2d Cir. 1979)......................................................................................6, 10, 21

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,*
378 F. Supp. 2d 448 (S.D.N.Y. 2005) ...........................................................................11

*Louis Vuitton Malletier and Oakley, Inc. v. Veit,*
211 F. Supp. 2d 567 (E.D. Pa. 2002) ...........................................................................17

*Motorola, Inc. v. Abeckaser,*
No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833 (E.D.N.Y. May 14, 2009) ..........................24

*Multi-Local Media Corp v. 800 Yellow Book Inc.,*
813 F. Supp. 199 (E.D.N.Y. 1993) ...............................................................................6

*Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.,*
680 F.2d 891 (2d Cir. 1982)..........................................................................................6

*Philip Morris USA, Inc. v. Felizardo,*
No. 03 Civ. 5891 (HB), 2004 WL 1375277 (S.D.N.Y. June 18, 2004).........................................18

*Polaroid Corp. v. Polaroid Elecs. Corp.,*
287 F.2d 492 (2d. Cir. 1961)..........................................................................................9

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.,*
737 F. Supp. 1521 (S.D. Cal. 1989)...........................................................................25-26

**Table of Authorities**
**(Continued)**

Page(s)

*Salinger v. Colting,*
No. 09-2878-cv, 2010 WL 1729126 (2d Cir. Apr. 30, 2010) ..........................................5

*Savin Corp. v. Savin Group,*
391 F.3d 439 (2d Cir. 2004)...........................................................................................11

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,*
202 F.3d 489 (2d Cir. 2000).................................................................................... 15-16

*Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc.,*
823 F. Supp. 1077 (S.D.N.Y. 1993) ..............................................................................19

*Tiffany (NJ) Inc., v. eBay, Inc.,*
576 F. Supp. 2d 463 (S.D.N.Y. 2008) ............................................................................12

*Topps Co., Inc. v. Gerrit J. Verburg Co.,*
41 U.S.P.Q.2d 1412 (S.D.N.Y. 1996).............................................................................9

*Tri-Star Pictures, Inc. v. Unger,*
14 F. Supp. 2d 339 (S.D.N.Y. 1998) ..............................................................................18

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.,*
749 F. Supp. 473 (S.D.N.Y. 1990) .................................................................................28

*U.S. v. First Nat. City Bank,*
379 U.S. 378 (1965).......................................................................................................25

*U.S. v. Torkington,*
812 F.2d 1347 (11th Cir. 1987) .....................................................................................20

*Virgin Enters., Ltd. v. Nawab,*
335 F.3d 141 (2d Cir. 2003)............................................................................................5

*Vogster Entertainment, L.L.C. v. Mostovoy,*
No. 09-CV-1036 (RRM (RER), 2009 WL 691215 (E.D.N.Y. March 16, 2009) .........................14

*Von Grabe v. Ziff Davis Publ'g Co.,*
91 Civ. 6275 (DLC), 1994 WL 719697 (S.D.N.Y. Dec. 29, 1994)...............................5

*Vuitton v. White,*
945 F.2d 569 (3d Cir. 1991).........................................................................................22

**Table of Authorities**
**(Continued)**

Page(s)

*Yurman Design Inc. v. Diamonds & Time*,
169 F. Supp. 2d 181 (S.D.N.Y. 2001) ..............................................................5

**Statutes**

15 U.S.C. § 1065 ..............................................................................................3, 7

15 U.S.C. § 1114 ......................................................................................7, 21, 24

15 U.S.C. § 1115(a) ...............................................................................................8

15 U.S.C. § 1116(d) .......................................................................................20-22

15 U.S.C. § 1117(a) .............................................................................................24

15 U.S.C. § 1117(b) .............................................................................................24

15 U.S.C. § 1117(c) .............................................................................................24

15 U.S.C. § 1125 ...................................................................................................8

15 U.S.C. § 1125(a) .............................................................................................10

15 U.S.C. § 1125(c) .............................................................................................11

15 U.S.C. § 1125(d) ....................................................................................13, 15-16

15 U.S.C. § 1127 .................................................................................................10

18 U.S.C. § 2318 .................................................................................................20

N.Y. C.P.L.R. 6201(1) .........................................................................................27

N.Y. C.P.L.R. 6210 .............................................................................................26

N.Y. C.P.L.R. 6212(a) .........................................................................................26

N.Y. Gen. Bus. Law § 349 ..................................................................................18

N.Y. Gen. Bus. Law § 350 ..................................................................................18

**Table of Authorities**
**(Continued)**

Page(s)

N.Y. Gen. Bus. Law § 360-1 ...........................................................................................11

**Other Authorities**

Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation,
130 Cong. Rec. H12076 (Oct. 10, 1984) ............................................................22

**Rules**

FED. R. CIV. P. 26(d) ......................................................................................................28

FED. R. CIV. P. 30(b) ......................................................................................................27

FED. R. CIV. P. 34(b) ......................................................................................................27

FED. R. CIV. P. 64 ....................................................................................................26-27

FED. R. CIV. P. 65(b) ........................................................................................................5

**Treatises**

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:40 (4th ed.).............................25

## INTRODUCTION

Burberry Limited (UK) and Burberry Limited (US) (collectively "Burberry") is an internationally recognized luxury brand involved in the design, manufacture, advertising, distribution, and sale of high-quality apparel, handbags, scarves, luggage, and other accessories. Burberry owns numerous federally registered trademarks, many of which are incontestable. As a result of Burberry's advertising and promotional efforts and its continuous use of the Burberry trademarks for many years, Burberry has attained one of the highest levels of recognition among luxury brands in the United States and the Burberry trademarks have become famous.

The Defendants, who have no affiliation with Burberry, operate a large number of Internet websites, all of which incorporate the BURBERRY® trademark in the websites' domain names, and which are intentionally designed to appear as authorized BURBERRY® retail Internet websites (the "Infringing Websites"). The Defendants use the Infringing Websites to sell a wide variety of counterfeit "Burberry"-branded merchandise, including handbags, scarves, shoes, wallets, belts, ties, outerwear, sunglasses and watches. The Defendants have also intentionally used Plaintiffs' registered trademarks, logos and advertising campaign images throughout the Infringing Websites to falsely convey to consumers that the infringing websites are authorized BURBERRY® retail Internet websites, when these websites, in fact, advertise and sell counterfeit products.

Burberry can demonstrate that, due to the Defendants' ongoing sale of counterfeit merchandise on the Infringing Websites, it can prove that the Defendants are liable for trademark counterfeiting, infringement, dilution, cybersquatting, and unfair competition.

To halt the Defendants' illegal activities, and to protect Burberry and the public from the ongoing confusion caused by the sale of counterfeit goods, Burberry respectfully moves this

1

Court for a Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order, and Order to Show Cause for a Preliminary Injunction.

## FACTUAL BACKGROUND

Burberry is an internationally recognized luxury brand involved in the design, manufacture, advertising, distribution, and sale of high-quality apparel, handbags, scarves, luggage, and other accessories. Complaint at ¶ 74.

For more than 80 years, Burberry has continuously used in connection with its products a distinctive check trademark (the "Burberry Check"), the BURBERRY word mark and the Equestrian Knight Design (collectively, the "Burberry Trademarks"). Burberry has devoted substantial resources to promoting the goodwill of the Burberry Trademarks. *Id.* at ¶ 75. As a result, the Burberry Trademarks have become famous and serve to symbolize Burberry and its reputation as a manufacture of high quality, luxury brand protects. *Id.*

The United States Patent and Trademark Office has granted Burberry numerous federal registrations for the Burberry Trademarks, including the following registrations. *See* Complaint at ¶ 76, Ex. 41:

| Registration Number | Registered Trademark | Registration Date | International Classes |
|---|---|---|---|
| 1,607,316 | BURBERRY | 07/24/1990 | 09 |
| 2,624,684 | BURBERRY | 09/24/2002 | 35 |
| 1,747,765 | BURBERRY | 01/19/1993 | 14 |
| 2,875,336 | BURBERRY | 08/17/2004 | 09, 14 |
| 260,843 | BURBERRY | 08/27/1929 | 25 |
| 510,077 | BURBERRY | 05/24/1949 | 25 |
| 1,241,222 | Burberry Check | 06/07/1983 | 25 |
| 2,845,852 | Burberry Check | 05/25/2004 | 09 |
| 1,855,154 | Burberry Check | 09/20/1994 | 14 |
| 2,022,789 | Burberry Check | 12/17/1996 | 18, 24, 25, 28 |
| 3,529,814 | Burberry Check | 11/11/2008 | 18, 20, 21, 24, 25, 28, 35 |
| 2,612,272 | Burberry Check | 08/27/2002 | 35 |
| 2,732,617 | Burberry Check | 07/01/2003 | 03, 18, 25 |
| 3,202,484 | BURBERRY LONDON | 01/23/2007 | 03, 04, 09, 14, 16, 18, 20, 21, 25, 28 |
| 1,133,122 | BURBERRYS | 04/15/1980 | 18 |
| 1,622,186 | Equestrian Knight Design | 11/13/1990 | 09 |
| 2,512,119 | Equestrian Knight Design | 11/27/2001 | 03, 18 |
| 2,952,399 | Equestrian Knight Design | 05/17/2005 | 09, 14 |
| 1,903,508 | Equestrian Knight Design | 07/04/1995 | 14 |
| 863,179 | Equestrian Knight Design | 01/07/1969 | 25 |
| 2,610,329 | PRORSUM | 08/20/2002 | 25 |
| 2,654,697 | PRORSUM | 11/26/2002 | 18 |

The registrations for the Burberry Trademarks are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

The Burberry Trademarks have been used by Plaintiffs on, and in connection with, the advertising and sale of Burberry's products, including, but not limited to, apparel, such as scarves, shirts, jackets, luggage, handbags, and other items, in interstate and intrastate commerce, including commerce in the State of New York, and in this judicial district. Complaint at ¶ 78. As a result of their widespread use, these trademarks have become a symbol of modern luxury and a symbol of Burberry. The Burberry Trademarks have acquired secondary meaning and

have come to be known as source identifiers for authentic Burberry products. *Id.*

Burberry merchandise is sold in 164 retail stores, 171 concessions, 45 outlets, and 55 franchise stores, with e-commerce in over 25 countries. *Id.* at ¶ 79. In the United States, Burberry products are sold in 80 retail and outlet stores, online at www.burberry.com, and at well-known department stores such as Saks Fifth Avenue, Neiman Marcus and Nordstrom. *Id.*

As a result of Burberry's advertising and promotional efforts and its continuous use of the Burberry Trademarks for many years, Burberry has attained one of the highest levels of recognition among luxury brands in the United States and the Burberry Trademarks have become famous. *Id.* at ¶ 80.

The Defendants, who have no affiliation with Burberry, operate a large number of Infringing Websites, all of which incorporate the BURBERRY® trademark in the websites' domain names (the "Domain Names")[1], and which are intentionally designed to appear as authorized BURBERRY® retail Internet websites. *Id.* at ¶¶ 81-82; *see also* Declaration of Melissa Roth ("Roth Decl.") at ¶¶ 10-11. The Defendants use the Infringing Websites to sell a wide variety of counterfeit "Burberry"-branded merchandise, including handbags, scarves, shoes, wallets, belts, ties, outerwear, sunglasses and watches ("Counterfeit Products"). The Defendants have also intentionally used Plaintiffs' registered trademarks, logos and advertising campaign

---

[1] The infringing domain names herein at issue (the "Domain Names") include: Burberry-Scarves.com; PingBurberryScarf.com; CheapBurberryScarf.com; Burberry2U.com; InBurberry.com; BurberryDress.com; BurberryScarf-UK.com; USBurberryOutlets.com; BurberryScarf-US.com; USBurberryScarf.com; BurberryOutletStores.net; USBurberryOutlet.net; Burberry-Outlet-Online.com; BurberryOutletOnline.net; BurberryOutletOnlines.com; Burberry-Outlet-Online.net; BurberryUK.net; UKBurberry.net; USABurberry.com; USABurberry.net; Burberry4bags.com; BurberryLines.com; Burberry4handbags.com; MyBurberryShops.com; Burberry-Bags.com; Burberry-scarf.net; Burberry-Bag.org; BurberryOnSlae.com; MyBurberryOutlet, SaleBurberryBags.com; Burberry-Scarf-Sale.net; Burberry-Outlet.org; Discount-Burberry-Handbags.org; US-BurberryOutlet.com; USBurberryOutlet.com; BurberryScarf.org; Burberry-Outlet-Stores.com; BurberryOutletOnline.com; and Burberry-Outlet.net.

images throughout the Infringing Websites to falsely convey to consumers that the Infringing

Websites are authorized BURBERRY® retail Internet websites, when the Infringing Websites, in

fact, advertise and sell Counterfeit Products.  Roth Decl. at ¶ 11.

## ARGUMENT

**I.  BURBERRY IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION HALTING DEFENDANTS' COUNTERFEIT SALES**

Based on the Complaint and attached Exhibits, and the sworn Declaration of Melissa

Roth, it is clear that Burberry is entitled to a Temporary Restraining Order and Preliminary

Injunction upon its showing of: (1) irreparable harm, and (2) (a) a likelihood of success on the

merits, as well as (b) sufficiently serious questions going to the merits of the case to make them a

fair ground for litigation, and (3) a balance of hardships tipping decidedly in its favor. *Virgin*

*Enters., Ltd. v. Nawab*, 335 F.3d 141, 145-46 (2d Cir. 2003); *see also Von Grabe v. Ziff Davis*

*Publ'g Co.*, 91 Civ. 6275 (DLC), 1994 WL 719697, at *1 (S.D.N.Y. Dec. 29, 1994) (same

standard applies for both temporary restraining orders and applications for preliminary

injunctions).

This standard applies where a preliminary injunction is sought in intellectual property

cases including claims for trademark counterfeiting and infringement, cybersquatting, dilution,

and related state law unfair competition claims.  *See, e.g.*, *Salinger v. Colting*, No. 09-2878-cv,

2010 WL 1729126, at *9 (2d Cir. Apr. 30, 2010); *Yurman Design Inc. v. Diamonds & Time*, 169

F. Supp. 2d 181, 184-86 (S.D.N.Y. 2001).  As discussed below, Burberry clearly meets each of

these criteria in this case.

### A.  The Defendants' Sale of Counterfeit Products On the Infringing Websites Irreparably Harms Burberry

In the Second Circuit, a plaintiff shows irreparable harm justifying the court's imposition

of a temporary restraining order and/or preliminary injunction when it is able to establish that a

defendant's actions create a likelihood of confusion. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988). Indeed, "a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy" a temporary restraining order under FED. R. CIV. P. 65(b). *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979). Irreparable injury due to likelihood of confusion is likewise sufficient grounds for the granting of a preliminary injunction. *See Hasbro, Inc.*, 858 F.2d at 73.

The Defendants' unlawful activities have included selling and shipping Counterfeit Products to purchasers in this district. *See* Complaint at ¶¶ 87-89, and Roth Decl. at ¶ 12. The Defendants' actions have created actual confusion and will continue to pose an ongoing likelihood of confusion, unless and until the Defendants' illegal practices are halted by an injunction from this Court.

Burberry has been damaged as a result of diminished goodwill and loss of control over reputation or loss of quality control of its products from the sale of counterfeit reproductions of the Burberry Trademarks. This damage is both irreparable and unquantifiable, necessitating an immediate halt to the Defendants' unlawful activities. *See Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.*, 680 F.2d 891, 894 (2d Cir. 1982) ("Where there is…such high probability of confusion, injury irreplaceable in the sense that it may not be fully compensable in damages almost inevitably follows…[t]he likelihood of damage to reputation and good will, even where there is no proof of lost sales…[and] entitles a plaintiff to preliminary relief.") (citation omitted); *Multi-Local Media Corp v. 800 Yellow Book Inc.*, 813 F. Supp. 199, 202 (E.D.N.Y. 1993) ("Federal courts have long recognized the need for immediate injunctive relief in trademark infringement cases due to the amorphous nature of the trademark and the resulting difficulty in proving monetary damages.").

Therefore, it is clear that Burberry has suffered, and will continue to suffer, ongoing irreparable harm due to the Defendants' willful counterfeiting, which warrants the issuance of a temporary restraining order and preliminary injunction against the Defendants.

**A. Burberry is Likely to Prevail on its Trademark Counterfeiting, Infringement, Dilution, Cybersquatting, and Unfair Competition Claims**

    **1. Burberry is Likely to Prevail on its Claims Alleging Federal Trademark Counterfeiting and Trademark Infringement in Violation of Section 32 of the Lanham Act (15 U.S.C. §1114).**

To prevail on its trademark counterfeiting claims Plaintiffs must prove that (1) the Burberry Trademarks are entitled to protection; and (2) that the Defendants' unauthorized use of the Burberry Trademarks on the Counterfeit Products and throughout the Infringing Websites is likely to cause confusion among consumers. *See Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781 (CM), 2009 WL 1675080, at *5 (S.D.N.Y. June 10, 2009) (McMahon, J.). Here, Burberry clearly satisfies its burden of showing the Burberry Trademarks' validity and strength, and demonstrating that the Defendants' unlawful activities have created actual confusion, and continue to create a substantial, ongoing likelihood of confusion, justifying an order immediately enjoining the Defendants' illegal practices.

    **a)**     *The Burberry Trademarks are Valid, Protectable and Famous*

Since Burberry's inception in 1856, the Plaintiffs have promoted their respective trademarks in the United Kingdom and throughout the world, including for several decades in the United States. *See* Complaint at ¶¶ 75, 80; Roth Decl. at ¶ 6; *see also Burberry Ltd.*, 2009 WL 1675080, at *1-2 ("Over the last 150 years, Burberry has adopted and promoted several elements to identify and distinguish its merchandise.").

For more than a century, Burberry's has spent many millions of dollars to build good will in its marks, including by creating high profile advertising and promotional campaigns

incorporating several media platforms. *See Id.*, at *2. Consequently, Burberry has earned

substantial sales success, and has been recognized as a top global brand by both *BusinessWeek*

magazine and the United States Patent and Trademark Office. *See Id.*

Burberry has obtained numerous federal registrations for the Burberry Trademarks that

are in full force and effect and many are incontestable pursuant to 15 U.S.C. § 1065. Complaint

at ¶ 77. These registrations are *prima facie* evidence of the validity of Plaintiffs' Marks, as well

as of Plaintiffs' exclusive right to use the marks in commerce and in connection with the goods

or services specified in the registrations. *See* 15 U.S.C. §1115(a).

Further, the Burberry Trademarks are "famous" and are protected under the Federal Anti-

Dilution law. *See Burberry Ltd.*, 2009 WL 1675080, at *5, *12 ("[t]he Burberry Marks are

famous....[a]ll of the Burberry Marks also have a high degree of acquired distinctiveness."); *see*

*also Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*, No. 07 Civ. 3997 (PAC), 2010

WL 199906, at *8 (S.D.N.Y. Jan. 19, 2010) ("The BURBERRY word mark is famous within the

meaning of [the anti-dilution provisions of 15 U.S.C. §1125].").

The Burberry Trademarks are used in connection with the same type of goods and

services that Defendants have counterfeited, namely on-line retail store services, apparel, and

related accessories, including shirts, pants, jackets, gloves, shoes, and scarves. *See Burberry*

*Ltd.*, 2009 WL 1675080, at *2 (discussing Burberry's extensive use of its marks in connection

with a variety of goods, including "handbags, clothing luggage, umbrellas, and accessories....

and in all manner of advertising.").

Therefore, Burberry will prevail in showing Plaintiffs' Marks are valid, protectable and

indeed, famous.

### b) Defendants' Counterfeiting Constitutes Use in Commerce Likely to Cause Consumer Confusion

The Defendants have offered hundreds of Counterfeit Products for sale on the Infringing Websites, and have sold Counterfeit Products to buyers in this district. *See* Complaint at ¶¶ 87-89; Roth Decl. at ¶ 11. Therefore, it is clear that the Defendants' activities constitute use in commerce giving rise to liability for federal trademark counterfeiting and infringement. *See Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 308303, at *2 (S.D.N.Y. 2010) ("Plaintiffs have submitted evidence that Defendants sold counterfeit Gucci and Balenciaga products online. As such, Defendants are liable for violating the Lanham Act....").

To gauge the likelihood of confusion caused by a defendant's conduct, Second Circuit courts typically apply the eight-factor test articulated in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495-96 (2d Cir. 1961). However, where defendants are using counterfeit reproductions of a plaintiff's marks, as is the case here, courts need not engage in a detailed *Polaroid* factor analysis, "because counterfeit marks are inherently confusing." *Burberry Ltd.*, 2009 WL 1675080, at *5 (internal citations omitted); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (citing *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made without a more formal and complete discussion of all the Polaroid factors.")).

Because counterfeit items are designed to *intentionally* cause consumer confusion, "[t]o find a likelihood of confusion, a court need only determine that the items at issue are counterfeit and that the Defendants distributed, offered for sale or sold the items." *Burberry Ltd.*, 2009 WL 1675080, at *5.

9

In this case, it is overwhelmingly clear that the Defendants have sold and advertised a vast array of counterfeit goods bearing "spurious mark[s] which [are] identical with, or substantially indistinguishable from" the Burberry Trademarks. 15 U.S.C. § 1127. As such, the Court need not engage in any further inquiry to determine that consumers are likely to be confused by the Defendants' unlawful practices, and, therefore, that Burberry is likely to prevail on its Trademark Counterfeiting claims.

Accordingly, Burberry is entitled to injunctive relief halting Defendants' willful counterfeiting of the Burberry Trademarks. *See In re Vuitton Et Fils S.A.*, 606 F.2d at 4 (granting the plaintiff's request for an ex parte temporary restraining order because "the very purpose of marketing [counterfeit] cheaper items is to confuse the buying public into believing it is buying the true article.").

### 2. Burberry is Likely to Succeed on its Claims Alleging False Designation of Origin in Violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

Under Section 43(a) of the Lanham Act, liability for false designation of origin is appropriate where a defendant uses any "word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)   is likely to cause confusion… as to the affiliation, connection, or association of [the defendant] with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities, by another person, or

(B)   in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of…goods, services, or commercial activities." 15 U.S.C. §1125(a).

A successful showing of federal trademark counterfeiting and trademark infringement under section 32 of the Lanham Act necessarily also makes out a claim for false designation of origin. *See Burberry Ltd.*, 2009 WL 1675080, at *8 ("Where a plaintiff is successful in his claim

for federal trademark infringement under section 32, as is the case here, it is not necessary for the plaintiff to make any additional showing to make out his claim under section 43(a)." Therefore, Burberry's ample showing that the Defendants' activities constitute federal trademark counterfeiting and infringement also demonstrates that the Defendants are further liable under the Lanham Act for false designation of origin. *See Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (plaintiff's showing that defendant sold counterfeit cigarettes and packaging sufficient to make out *prima facie* case for summary judgment on claims alleging federal trademark counterfeiting and false designation of origin.)

### 3. Plaintiffs are Likely to Succeed on Their Claims Alleging Federal Trademark Dilution in Violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)) and Trademark Dilution in Violation of the New York General Business Law (N.Y. Gen. Bus. Law § 360-1).

Defendants have intentionally and willfully diluted, and/or are likely to dilute, the distinctive quality of the famous Burberry Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). In the Second Circuit, a finding of trademark dilution requires a plaintiff to show that "(1) it is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir. 2004) (internal citations omitted). The causes of action for trademark dilution under the Lanham Act and under New York state law are "substantively similar and may be analyzed together." *Id.* at 523.

There can be no dispute that the Burberry Trademarks are famous. *See Burberry Ltd.*, 2009 WL 1675080, at *13 ("Burberry has sufficiently demonstrated the fame of its marks [under the dilution inquiry]."). Likewise, it is beyond argument that the Burberry Trademarks became

11

famous decades before the Defendants' commercial use began. *See id.* ("[Defendants'] use of Burberry Marks began sometime during the last decade-long after the Burberry Marks became famous.").

Congress has clearly articulated that a plaintiff need only show that a defendant's use is likely to cause dilution, and need not show actual dilution. *See* 15 U.S.C. §1125(c)(1); *see also Tiffany (NJ) Inc., v. eBay, Inc.*, 576 F. Supp. 2d 463, 522 (S.D.N.Y. 2008) (Trademark Dilution Revision Act of 2006 "reasserted the less stringent 'likelihood of dilution' standard to dilution cases.").

Where a defendant has engaged in counterfeiting, the Second Circuit has found that if "a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark,' there is a presumption of actual dilution.'" *Fendi Adele S.R.L.*, 689 F. Supp. 2d. 585, 598 (S.D.N.Y. 2010) (holding that defendants' sale of counterfeit goods actually diluted the plaintiff's marks) (quoting *Savin Corp.*, 391 F.3d at 452-53).

Two species of dilution exist under federal and New York trademark law: "tarnishment, which is the disparagement of the mark's reputation, and (2) blurring, which the diminished ability of the mark to serve as a unique identifier of the plaintiffs' goods and services." *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 452, 466 (S.D.N.Y. 2007). Blurring occurs where a defendant's appropriation of a plaintiff's mark to identify its own goods or services results in the that mark losing its "ability to serve as a unique [source] identifier...." *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 300 (S.D.N.Y. 2002). Tarnishment results where a misappropriated mark "is linked to products of shoddy quality...with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's

unrelated goods…. The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *Burberry Ltd.*, 2009 WL 1675080, at *14.

As a matter of law, the Defendants' sale of Counterfeit Products bearing one or more of the Burberry Trademarks blurs and tarnishes the Burberry Trademarks. Counterfeit goods necessarily result in dilution by blurring, by diminishing a mark's ability to serve as a unique source identifier. *See Burberry Ltd.*, 2009 WL 1685080, at *14 ("'[W]hen identical marks are used on similar goods, dilution-the capacity of the famous mark to identify and distinguish the goods of the trademark holder-obviously occurs.'") (citing *Am. Honda Motor Co. v. Pro-Line Protoform*, 325 F. Supp. 2d 1081, 1082 (C.D. Cal. 2004)).

Moreover, the Counterfeit Products bear exact replicas of the Burberry Trademarks, but are, in fact, cheap facsimiles of authentic Burberry-branded products, thus tarnishing Burberry's reputation among consumers. *See* Roth Decl. at ¶ 9(b), 11; *see also Burberry Ltd.*, 2009 WL 1675080, at *14 (holding that defendants' counterfeit goods tarnished the Burberry Trademarks because they were "made from substandard materials, and contained errors not found in authentic Burberry merchandise.").

Therefore, the Plaintiffs are likely to succeed on their claims of trademark dilution under both state and federal law.

**4.   Burberry is Likely to Prevail on its Claim that the Infringing Websites' Domain Names Constitutes Cybersquatting Under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1)).**

The Anticybersquatting Consumer Protection Act of 1996 ("ACPA"), provides that the registrant of a domain name is guilty of cyberpiracy where [the registrant]: "(i) has a bad faith intent to profit from [a] mark; and (ii) registers, traffics in, or uses a domain name that—

(I)   in the case of a mark that is distinctive at the time of the registration of the domain name, is identical or confusingly similar to that mark;

13

(II)    in the case of a famous mark that is famous at the time of the registration of the domain name, is identical or confusingly similar to or dilutive of that mark...." 15 U.S.C. §1125(d)(1)(A).

In such cases, in addition to other damages, "a court may order the forfeiture or cancellation of the domain name or the transfer if the domain name to the owner of the mark." 15 U.S.C. §1125(d)(1)(C).

Courts often cite that one focus of the ACPA is to address counterfeit sellers who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target distinctive marks to defraud consumers." *Dudley v. HealthSource Chiropractic, Inc.*, 585 F. Supp.2d 433, 442 (W.D.N.Y. 2008) (internal citations omitted).

It is clear that the Defendants deliberately registered, trafficked in, and used over two dozen domain names that incorporate the Plaintiffs' federally registered BURBERRY® word mark, in bad faith and in order to profit from Burberry's good will. *See* Complaint at ¶ 83. As a result, Burberry is likely to succeed in showing that Defendants violated the Anticybersquatting Consumer Protection Act.

   a)    *Burberry's Trademarks Are Distinctive and Famous*

As discussed *supra*, Burberry's Trademarks are highly distinctive, and indeed famous.

   b)    *The Defendants' Domain Names Are Identical Or Confusingly Similar To and Dilutive of the Burberry Trademarks*

The Defendants' Domain Names are identical to or confusingly similar to the BURBERRY® trademark. Indeed, in an attempt to confuse the public into believing that the Infringing Websites are associated with Burberry, each of the Domain Names incorporates the federally registered and incontestable BURBERRY® trademark. While the domains pair the BURBERRY® trademark with one or more generic or descriptive terms such as "Scarf," "Sale,"

"Bags," "Handbags," Outlet," "Shops," "Cheap," "Discount," and "Online," (*see* Complaint at ¶

82), courts have found that merely appending generic terms to a trademark does not distinguish

the domain name from the incorporated protected mark. *Vogster Entertainment, L.L.C. v.*

*Mostovoy*, No. 09-CV-1036 (RRM (RER), 2009 WL 691215, at *4 (E.D.N.Y. March 16, 2009)

(defendant's registration of domain names pairing the plaintiff's marks with generic terms (e.g.,

"awards") violated the ACPA).

     Moreover, consumers who search the Internet for "BURBERRY" may be directed to

Defendants' Infringing Websites, creating a likelihood of confusion. This confusion is only

heightened by the fact that the generic words ""Scarf," "Sale," "Bags," "Handbags," Outlet,"

"Shops," "Cheap," "Discount," and "Online" added by Defendants are descriptive of Burberry's

goods and services.  While Burberry never authorized or permitted Defendants to use the

BURBERRY® word mark, a consumer encountering the Defendants' uses of phrases such as

"Burberry-Bags," "Burberry-Outlet," "BurberryScarf," "BurberryDress," "BurberryLines," etc.,

is likely to believe that the phrases identify goods or services emanating from, authorized by, or

in some way connected with Burberry.  Moreover, Defendants use the BURBERRY® trademark

in an effort to confuse consumers into purchasing counterfeit "Burberry"-branded merchandise..

     Accordingly, the Domain Names are identical and/or confusingly similar to Plaintiffs'

famous and distinctive BURBERRY® trademark.

        **c)**     ***Defendants Have a Bad Faith Intent to Profit From the Burberry***
                     ***Trademarks***

     The ACPA lists nine (9) non-exclusive factors to help determine whether a defendant has

exhibited a bad faith intent to profit from the use of a plaintiff's mark into a domain name. *See*

15 U.S.C. §1125(d)(1)(B)(i). *See also Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202

F.3d 489, 498 (2d Cir. 2000) ("The factors are...indicia that 'may' be considered along with other

facts."). Applying the ACPA's nine-factor test, Defendants unmistakably have a bad faith intent to profit from the use of the BURBERRY® trademark in the Domain Names.

The Defendants have no legitimate rights whatsoever in any of the Burberry Trademarks. *See* 15 U.S.C. §1125(d)(1)(B)(i)(I). The Defendants registered the Domain Names decades after the Plaintiffs registered its BURBERRY® word mark and long after the BURBERRY® word mark became both distinctive and famous. *See* 15 U.S.C. §1125(d)(1)(B)(i)(III). Defendants have no connection or affiliation with Burberry and have not received any license or consent, express or implied, to use the Burberry Trademarks in a domain name or in any other matter. Defendants have never been known by the Domain Names, unlike Burberry, which has made a name for itself with its BURBERRY® word mark since 1856. The Domain Names do not consist of a legal name of any one of the Defendants or a name commonly used to identify any one of the Defendants. *See id.* at §1125(d)(1)(B)(i)(II).

Defendants' use of the Domain Names cannot be considered to be in connection with a *bona fide* offering of goods or services. *See id.* at §1125(d)(1)(B)(i)(III–IV). On the contrary, Defendants' only uses of the Domain Names are in connection with the offer for sale and sale of counterfeit merchandise. The Defendants profit from the popularity and fame associated with the Burberry Trademarks by using the marks to solicit orders for counterfeit goods passed off as authentic Burberry merchandise. Such use demonstrates neither a bona fide offering of goods or services nor a legitimate interest.

Given Defendants' complete incorporation of the famous BURBERRY® word mark, it is evident that Defendants intentionally registered the Domain Names to attract Internet traffic to the Infringing Websites for commercial gain. Indeed, Defendants intentionally use the BURBERRY® word mark to attract customers who might be seeking Burberry's own website.

This use of the famous BURBERRY® word mark as "bait" to attract Internet users for commercial gain by creating consumer confusion demonstrates that the Domain Names are being used in bad faith.

Additionally, in light of Defendants' use of the Domain Names to sell Counterfeit Products, Defendants clearly intended to divert consumers from the Burberry.com website (and other Burberry-authorized websites), diluting and tarnishing the Plaintiff's goodwill in the Burberry Trademarks, and creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Infringing Websites. *See id.* at §1125(d)(1)(B)(i)(V); *see also Audi AG v. D'Amato*, 469 F.3d 534, 551 (6th Cir. 2006) ("D'Amato...purposefully included Audi's trademarks in his website and affirmatively misrepresented his relationship with Audi.... Consumers were likely to believe that his site was affiliated with Audi.  It can be inferred that D'Amato intended to divert these customers from purchasing goods and services from Audi's legitimate website.").

Courts have held that the registration of a trademark owner's mark as part of a domain name used to sell counterfeit versions of the trademark owner's goods is a particularly egregious form of bad faith. *See Audi AG*, 469 F.3d at 551 (Defendant's bad faith sale of counterfeit products bearing the plaintiff's marks via a website violating the ACPA supporting the imposition of attorneys' fees to the plaintiff, a remedy reserved only for "exceptional cases."). Bad faith could hardly be clearer than in a case like this, where Defendants have adopted the BURBERRY® word mark into the Domain Names, in an unabashed attempt to sell Counterfeit Products bearing the Burberry Trademarks. *See Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 578 (E.D. Pa. 2002) (Defendants' "registration and/or use of a domain name that incorporates the LOUIS VUITTON registered trademarks [to sell counterfeit LOUIS

VUITTON-branded products] constitutes bad faith and intent to profit from [plaintiff's] goodwill.").

Accordingly, the Court should not hesitate to find Plaintiffs likely to succeed under their ACPA claims.

> ### 2. Burberry is Likely to Succeed on its Claims that the Defendants have Committed Deceptive Acts and Practices Unlawful in Violation of the New York General Business Law (N.Y. Gen. Bus. Law §§349 and 350) and Engaged in Unfair Competition in Violation of the New York Common Law.

Burberry is likely to succeed on its claim alleging violation of the New York General Business Law. It is well established that the New York General Business Law and the New York common law closely track the provisions of the Lanham Act. *See Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 359 n.18 (S.D.N.Y. 1998) (because "the standards for trademark infringement are essentially the same under the Lanham Act, New York law and the common law . . . Defendants have similarly infringed upon Plaintiffs' marks under New York law and the common law"); *GTFM, Inc.*, 215 F. Supp. 2d at 300 ("GTFM's claims for trademark infringement and unfair competition under New York common law share many common elements with the Lanham Act claims....") (internal citations omitted).

In addition, Burberry is likely to succeed on its claim that the Defendants have engaged in unfair competition under New York common law. Unfair competition requires a showing not only of likelihood of confusion, but also "the additional element of bad faith or intent." *Burberry Ltd.*, 2009 WL 1675080, at *15 (internal citations omitted). Burberry has effectively shown that the Defendants acted in bad faith, because "'a presumption of bad faith attaches to the use of a counterfeit mark.'" *Id.* (quoting *Philip Morris USA, Inc. v. Felizardo*, No. 03 Civ. 5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)).

As a result, Burberry is likely to prevail on its claims that the Defendants have committed

Deceptive Acts and Practices Unlawful under the New York General Business Law, and Unfair

Competition in violation of New York common law, further justifying the Court's imposition of

injunctive relief. *See Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc.*, 823 F. Supp.

1077, 1093 (S.D.N.Y. 1993) ("the Court has already found, in the context of the Lanham Act

claims, that plaintiff has demonstrated [a] likelihood of confusion.... Accordingly, plaintiff has

shown a likelihood of success on the merits as to [its New York state law claims,

establishing]...independent ground for the issuance of a preliminary injunction.").

### B.    The Balance of Hardships Decidedly Tips in Plaintiffs' Favor

Because the Defendants' sales of Counterfeit Products via the Infringing Websites are in

clear violation of U.S. trademark law, the balance of hardships clearly favors Burberry. If this

Court issues an injunction enjoining Defendants' illicit use of the Burberry Trademarks, the

Defendants would not suffer *any* cognizable hardship. *See Gayle Martz, Inc. v. Sherpa Pet

Group, LLC*, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009) ("The only hardship that will befall

[defendant infringers] is the imposition of an obligation to comply with the law...."). By

contrast, Defendants' extensive counterfeiting of the Burberry Trademarks has harmed the

Plaintiffs, and will continue to do so unless and until an injunction issues. *See Estee Lauder, Inc.

v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and

continued injury to its reputation and good will would be a far more serious blow to it than the

curtailment of the sale by the defendants would be to them.").

### C.    Enjoining the Defendants' Activities is in the Public Interest

Enjoining the Defendants will not merely protect Burberry's rights, but will safeguard the

public as well. In the first instance, by knowingly trafficking in counterfeit products the

Defendants are not merely subject to civil liability, but to criminal sanction as well. *See* 18 U.S.C. § 2318.

In addition, federal and state trademark laws are premised first and foremost on protecting consumers from confusion as to goods true source and affiliation. *See Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000) ("Trademark laws exist to protect the public from confusion."). Moreover, the trademark regime serves the public interest not only by warding off confusion, so that consumers can trust the pedigree, content, and quality of products marketed under a particular mark, but also by incentivizing rights holders to offer for sale high quality goods:

> [T]o the extent that trademarks provide a means for the public to distinguish between manufacturers, they also provide incentives for manufacturers to provide quality goods.   Traffickers of...counterfeit goods, however, attract some customers who would otherwise purchase the authentic goods...This reduction in profits may cause trademark holders to decrease their investments in quality below what they would spend if there were no counterfeit goods.  This in turn harms those consumers who with to purchase higher quality goods." *Hermès Int'l*, 219 F.3d at 108 (quoting *U.S. v. Torkington*, 812 F.2d 1347, 1353 n.6 (11th Cir. 1987) (citation omitted).

This case squarely implicates the need to safeguard consumers by stanching the flow of counterfeit products into the marketplace, and bolsters the public interest in promoting the highest standards of workmanship and quality.  Therefore, in order to protect both Burberry and the public from the Defendants' scheme to create and profit from consumer confusion, this Court should temporarily and preliminarily enjoin the Defendants.

## II.   THIS COURT HAS THE AUTHORITY TO ISSUE AN *EX PARTE* ORDER

Section 34 of the Lanham Act grants this Court the authority to issue an injunction *ex parte* enjoining the sale and manufacture of counterfeit goods, and authorizing the seizure of any infringing goods, as well as any records relating to the manufacturing and marketing of such goods.  *See* 15 U.S.C. §1116(d)(1)(A).

Once a plaintiff has demonstrated that the Lanham Act has been violated, an *ex parte* order may issue upon a showing that: (i) the person obtaining the order will provide adequate security; (ii) an order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the applicant has not publicized the requested seizure; (iv) the applicant is likely to succeed in showing the defendant is using counterfeit marks; (v) an immediate and irreparable injury will occur if such seizure is not ordered; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the applicant in denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered; and (viii) if the applicant were to proceed on notice to the defendant, the defendant or persons acting in concert with defendant would destroy, move, hide, or otherwise make such matter inaccessible to the court. *See* 15 U.S.C. § 1116(d)(4)(B).

*Ex parte* orders are appropriate where "(1) the failure to issue it would result in 'immediate and irreparable injury, loss, or damage' and (2) the applicant sufficiently demonstrates the reason that notice 'should not be required.'" *See Matter of Vuitton et Fils S.A.*, 606 F.2d at 4. In fact, *ex parte* orders are particularly appropriate in cases where, as here, a defendant is actively engaged in counterfeiting. *See id.* (approving plaintiff's request for an *ex parte* temporary restraining order against defendants, because in counterfeiting cases "notice [to defendants] all too often appears to serve only to render fruitless further prosecution of the action." ).

Burberry has demonstrated that it is likely to succeed on the merits of its claims that the Defendants are using counterfeit marks; that Burberry will suffer (and has suffered) immediate and irreparable injury in the absence of an injunction and seizure order; and that the harm to

Burberry in denying the application far exceeds any harm to the Defendants from the issuance of an order.

Plaintiffs request this relief *ex parte* because experience in other cases has shown that, if given notice, defendants will simply cancel accounts, dispose of or hide their business records related to the counterfeit products, and move the situs of their counterfeit operations. In addition, without *ex parte* relief, Plaintiffs will not be able to discover the true identities of these counterfeiters, possible sources for the Counterfeit Products, and render meaningless Plaintiffs' equitable right to an accounting of profits from Defendants' sale of the Counterfeit Products. *See* Roth Decl. at ¶ 13. Without the requested relief, neither this Court nor Plaintiffs will be able to prevent the disappearance and/or destruction of crucial evidence that would enable Plaintiffs to track the sources of these Counterfeit Products. *See Vuitton v. White*, 945 F.2d 569, 575 (3d Cir. 1991):

> The legislative purpose behind § 1116(d) is clear from the Joint Statement of the congressional committees: "[t]he purpose of the *ex parte* seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases. Testimony…established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic…." (citing Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076 (Oct. 10, 1984)).

Plaintiffs are currently unaware of the true identities and locations of many of the Defendants or the location of Defendants' other websites and Counterfeit Products that are being readied for distribution. It is vital that Plaintiffs immediately obtain information concerning Defendants' sources, distribution network, and flow of profits to minimize future irreparable harm. *See* Roth Decl. at ¶ 14.

A preliminary injunction is insufficient in cases, such as the instant one, involving counterfeiters who have hidden their true identities. *See Vuitton*, 945 F.2d at 575 ("*ex parte*

22

seizures [are] necessary…to thwart the bad faith efforts of fly by night defendants to evade…jurisdiction…[and are appropriate] whenever a temporary restraining order and the threat of contempt…are unlikely to result in preservation of the evidence and the removal of the counterfeit merchandise from commerce.") (internal citations omitted).  Therefore, without the remedy of an *ex parte* temporary restraining order and seizure, this lawsuit will be an exercise in futility.  *Id.* at ¶ 15.

Plaintiffs meet each of the criteria for issuance of a temporary restraining order and seizure order required by the Lanham Act.  Plaintiffs have not publicized the requested seizure. Plaintiffs have submitted evidence to show Defendants' offer for sale and sale of Counterfeit Products.  *Id.* at ¶¶ 11, 19, 21.

If given notice, Defendants can easily move or destroy all records of their identity and hide all evidence of their dealings in Counterfeit Products.  If this occurs, Plaintiffs will suffer irreparable injury in that they will be denied access to the evidence to establish the identities of the counterfeiters and the accounting of profits to which Plaintiffs are entitled.  In addition, if Defendants are given notice, there is a strong likelihood that they will destroy all evidence that may assist Plaintiffs in determining the source of the Counterfeit Products, and in stopping the continuing manufacture and flow of these Counterfeit Products.  *Id.* at ¶ 16.

Along with an order for seizure of Counterfeit Products, means for making Counterfeit Products, and business records, Plaintiffs respectfully request an order of *ex parte* seizure of the Domain Names from Defendants. Specifically, Plaintiffs request an order transferring the Domain Names, whether by the domain name registries, or by registrars for particular Domain Names, to a registrar of Plaintiffs' selection to hold and disable the Domain Names until further order from this Court.  Only an *ex parte* seizure of the domain names of the Defendants'

websites will permit Burberry to prevent Defendants from continuing to confuse the public and harm Burberry. *Id.* at ¶ 17.

Given the nature of Defendants' counterfeiting operations, an order other than an *ex parte* order would be inadequate to achieve the purposes of 15 U.S.C. § 1114. The harm to Plaintiffs' Marks, as well as the goodwill in denying the application greatly outweighs the harm to Defendants' interests in continuing to sell Counterfeit Products.

If Plaintiffs were to proceed on notice to Defendants, Defendants would likely destroy, move, hide, or otherwise make such evidence inaccessible to the Court. It is thus respectfully submitted that an *ex parte* temporary restraining and seizure order is necessary to protect Plaintiffs' trademark rights and to prevent further harm to Plaintiffs and the consuming public.

## III. PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS

The Lanham Act permits a successful plaintiff to recover defendant's profits. *See* 15 U.S.C. §1117(a). Where a defendant has engaged in counterfeiting, a plaintiff is entitled to recover its actual damages, trebled, as well as reasonable attorneys' fees, and, subject to the court's judgment, prejudgment interest. *See id.* §1117(b). A plaintiff may instead elect to recover statutory damages up to a maximum amount of $2 million "per counterfeit mark per type of goods…sold, offered for sale or distributed." *See id.* §1117(c).

In order to protect a plaintiff's ability to recover from a defendant engaged in counterfeiting, "[courts have] the authority to freeze [defendant counterfeiters'] assets insofar as they could be used to satisfy an award of their profits pursuant to Plaintiff's Lanham Act claims." *See Balenciaga America, Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 WL 3952850, at *8 (S.D.N.Y. Oct. 8, 2010). *See also, Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833, at *3 (E.D.N.Y. May 14, 2009) ("because the Lanham Act

does give courts the authority to order equitable relief in the form of an accounting of the seller's profits, [U.S. District Courts] has the authority to order injunctive relief freezing assets in order to ensure availability of final equitable relief."); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:40 (4th ed.) (courts are authorized to freeze a defendant's assets in order to ensure "security for plaintiff's further recovery on an accounting of the counterfeiter's profits.").

It is highly likely once a judgment issues against them, Defendants would attempt to hide their assets. First of all, the Defendants openly trade in unlawful counterfeit good, indicating their disregard for the restrictions of United States law. Similarly, they are not likely to submit to the authority of this Court and to preserve sufficient funds to satisfy any judgments that the Court may issue against them. Instead, it is likely that they will attempt to remove and secret any funds from which Burberry might otherwise be able to recover.

Crucially, therefore, this Court has the ability to freeze Defendants' funds irrespective of whether they are located in the Southern District of New York, or, indeed, in the United States, since "'[o]nce personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under [the party's] control, whether the property be within or without the United States.'" *Balenciaga America, Inc.*, 2010 WL 3952850, at *8 (citing *United States v. First Nat. City Bank*, 379 U.S. 378, 384 (1965)). Indeed, an asset freeze is particularly appropriate in this matter given the scope and sophistication of the Defendants' illicit counterfeiting scheme, and the fact that the Defendants are "foreign individuals and corporations who have both incentive and capacity to hide their assets." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005); *see also Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989) ("Due to the international aspect of the defendant's business,

the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds.").

It is undeniable that the Defendants have "engaged in a substantial business of counterfeit goods, conducting such business out of the United States...[which] infringed upon [Plaintiffs'] trademark and caused irreparable harm both economically and by reputation to [P]laintiffs." *Id.* Thus, in order to preserve Burberry's ability to be recompensed for some measure of the harm caused by the Defendants' willful counterfeiting, this Court should order a freeze of the Defendants' assets. *See Gucci Am., Inc.*, 2010 WL 308303, at *5-6 (ordering that "all of Defendants' asset holders—defined as any banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies...who are in possession of Defendants' assets...are permanently restrained and enjoined from transferring...any of Defendants' assets....").

## IV. RULE 64 PROVIDES AN ADDITIONAL GROUNDS TO FREEZE DEFENDANTS' ASSETS

Rule 64 of the Federal Rules of Civil Procedure makes available to federal courts "[a]t the commencement of and throughout an action, every remedy...under the law of the state where the court is located, [that] provides for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64. In New York, "[a] court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York." *Hotel 71 Mezz Lender LLC v. Falor et al.*, 14 N.Y.3d 303, 311 (2010). Likewise, New York law permits courts to "without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee...." N.Y. C.P.L.R. 6210.

26

An asset seizure is appropriate where a plaintiff is able to show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to plaintiffs." N.Y. C.P.L.R. 6212(a). Burberry undoubtedly has a cause of action under CPLR 6212(a), and has amply demonstrated a likelihood of success on the merits of each of its causes of action. *See, e.g., Bank of Leumi Trust Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995) ("[a]s to the first and second requirements, *i.e.*, that a claim for money judgment exists and that the movant is likely to succeed on the merits, the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts.") (internal citation omitted). In addition, Burberry seeks statutory damages in the amount of no less than sixty million dollars ($60,000,000) in this action, and the Defendants have no known counterclaims.

Finally, among the CPLR §6201 bases authorizing an order of attachment is that "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business sin the state." N.Y. C.P.L.R. 6201(1). The several Defendants are individuals not domiciled in New York and foreign corporations not authorized to do business in New York. Therefore, Burberry has met each requirement for the issuance of a temporary restraining order and preliminary injunction freezing the Defendants' assets pursuant to FED. R. CIV. P. 64 and the laws of New York. *See Gucci Am.*, 2010 WL 308303, at *5-6 (ordering a freeze of defendants' assets "in accordance with Rule 64 of the Federal Rules of Civil Procedure…and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief….").

## V.   PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY

In order to effectively combat Defendants' widespread counterfeiting, Plaintiffs must determine the full extent of the Defendants' unauthorized use of the Burberry Trademarks, as

well as information relating to any sales, shipments, manufacturing processes, suppliers, sources, and confederates.  Furthermore, Burberry has a pressing need to determine the domain names of any additional Infringing Websites associated with the Defendants, as well as all information associated with any Infringing Website, including Infringing Websites not named herein. Accordingly, Burberry requests that an order allowing expedited discovery from Defendants, as well as third-party banks, credit card companies, other financial institutions, and Internet service providers, registries, and registrars.

The Federal Rules of Civil Procedure commit to this Court's discretion the power to order expedited discovery and document production, respectively. *See* FED. R. CIV. P. 30(b), FED. R. CIV. P. 34(b)(2)(A).  Expedited discovery is appropriate where a party can show: "(1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that defendant will suffer if expedited relief is granted." *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

This Court may also order expedited discovery from third parties in a civil action. *See* FED. R. CIV. P. 26(d).  A motion for expedited discovery from a third party is analyzed "under the flexible standard of reasonableness and good cause…[given] the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Ayyash*, 233 F.R.D. at 327 (internal citations omitted).  Where the moving party can show "good cause" for its motion, expedited discovery may issue. *See id.*

The Defendants in this matter are presently acting in brazen violation of Burberry's rights, and United States and New York law, and exploit the anonymity permitted by the Internet

to hide their identities and information about their activities. There is little reason to believe that the Defendants will submit to the typical exchange of discovery. Burberry's discovery requests to third parties have been narrowly tailored, and Burberry has no reason to expect that its requests are so burdensome that compliance would be onerous or impossible. Accordingly, there is good cause for the Plaintiffs' reasonable and necessary request for expedited discovery.

## CONCLUSION

For the all the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for a Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order, and Order to Show Cause for a Preliminary Injunction.

December 9, 2010                              Respectfully Submitted,

Joseph C. Gioconda (JG4716)
Jonathan A. Malki (JM4410)
The Gioconda Law Group PLLC
One Penn Plaza, 36th Floor
New York, NY 10119-0002
Telephone: (212) 786-7549
Facsimile: (888) 697-9665
Joseph.Gioconda@GiocondaLaw.com

Attorneys for Plaintiffs

BURBERRY LIMITED (UK) and
BURBERRY LIMITED (US)